# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:06CV304-C

| | |
|---|---|
| **BRENDA COLLINS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **MEMORANDUM AND RECOMMENDATION** |
| ) | **AND ORDER** |
| ) | |
| **TIAA-CREF, KATHY JACKSON,** ) | |
| **TARAN NARAYAN, and** ) | |
| **ROBERT SMITH,** ) | |
| ) | |
| **Defendants.** ) | |

**THIS MATTER** is before the Court on the pro se "Plaintiff's Motion of Noticed [sic] for Stipulated Protective Order" (document #121) filed August 11, 2008, the Defendants' "Motion for Settlement Conference" (document #124) filed August 28, 2008, and the Defendants' "Second Motion for Sanctions [including dismissal] ... " (document #129) filed September 10, 2008, and the parties' associated briefs and exhibits. See Documents ## 125, 127, 128, and 130-34.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and the subject Motions are now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will deny the Plaintiff's Motion for Protective Order and the Defendants' Motion for Settlement Conference; and will grant in part and deny in part the Defendants' Second Motion for Sanctions to the extent that it seeks monetary and other nondispositive sanctions. To the extent that the Defendants' "Second Motion for Sanctions" seeks dismissal of the Complaint, the undersigned will respectfully recommend that the Defendants' Second Motion for Sanctions be denied, as

discussed below.

## I. FACTUAL AND PROCEDURAL HISTORY

This is an action to recover an unspecified amount of compensatory and punitive damages for alleged employment discrimination based on race, gender, and national origin and retaliation in violation of of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e ("Title VII"). The Complaint also alleges a state law claim for defamation.

The pro se Plaintiff, Brenda Collins, is a former employee of the corporate Defendant, TIAA-CREF. The individual Defendants, Kathy Jackson, Taran Narayan, and Robert Smith, apparently were the Plaintiff's former co-workers and/or supervisors. For a more complete factual and procedural history, see "Memorandum and Order" issued August 22, 2008 (document #123) (granting in part and denying in part the "Defendants' Motion to Quash Third-Party Subpoena" and "Defendant's Expert's Motion to Quash Plaintiff's Subpoena for Records," and denying the "Plaintiff's Motion for Extension of Time for Expert Witness's Cross-Examination").

Relevant to the subject Motions, on January 29, 2007, the Defendants served their initial discovery requests, including Requests for Production of Documents. While initially complying with some of the discovery requests, the Plaintiff ultimately failed to produce complete medical records or to execute and return the medical authorizations needed for Defendants otherwise to obtain Plaintiff's medical documents and psychotherapy notes directly from her healthcare providers.

Defense counsel sent three letters to the Plaintiff in an attempt to resolve the discovery dispute without the necessity of court involvement.

On April 11, 2007, the Plaintiff returned to the Defendants a complete set of executed

medical authorizations. Believing the matter to be resolved, the Defendants' counsel notified the Plaintiff of the Defendants' intent to obtain Plaintiff's medical records directly from her healthcare providers, a step they were required to take under governing HIPAA Privacy Regulations, 45 C.F.R. § 164.512(e), prior to forwarding those authorizations to the Plaintiff's providers.

On April 17, 2007, and despite having executed the medical authorizations with knowledge of their intended use, the Plaintiff filed her first "Motion to Quash" (document #68), objecting to producing her medical records. In the same Motion, the Plaintiff also complained that there were deficiencies in the Defendants' discovery responses. Concerning the second point, the record showed to the contrary that the Defendants had timely served their initial disclosures as required by Fed. R. Civ. P. 26(a)(1), had timely responded to Plaintiff's Interrogatories, and that she had served no other discovery.

On May 1, 2007, the Defendants filed a "Motion for Sanctions" (document #71), seeking imposition of monetary sanctions and issuance of a warning to the Plaintiff of the consequences of any further failure to comply with the rules governing discovery.

In a May 24, 2007 "Memorandum and Order," the undersigned denied the Plaintiff's "Motion to Quash" and the Defendants' "Motions for Sanctions," concluding that "[a]lthough there had been a general pattern of noncompliance on the Plaintiff's part, no warnings have previously been given concerning possible consequences of such conduct."[1] See Document #74 at 4. The undersigned did, however, issue the Plaintiff a strongly-worded warning that

---

[1] Prior to entry of sanctions, the Fourth Circuit has emphasized the significance of both establishing a history of dilatory action and warning to the offending party of what may follow. See, e.g., Hathcock v. Navistar Int'l Transp. Corp., 55 F.3d 36, 40 (4th Cir. 1995); Choice Hotels Int'l v. Goodwin & Boone, 11 F.3d 469, 473 (4th Cir. 1993); and Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 953 (4th Cir. 1987).

3

any further failure to respond to the Defendant's reasonable discovery requests, or to otherwise comply fully with any of the Court's Orders, the Local Rules, or the Rules of Civil Procedure, will likely result in the imposition of sanctions. **Sanctions can include the offending party being required to pay the opposing party's costs, including reasonable attorney's fees in their entirety, and may also include dismissal of the Complaint with prejudice.**

Id. at 5 (emphasis in original).

In spite of this warning, the Plaintiff specifically instructed her medical providers to ignore the authorizations she had executed and to withhold her medical records from the Defendants. Indeed, in addition to her oppositional conduct in this case, the Plaintiff engaged in conduct so disruptive and harassing that one of her treating physicians, Dr. Moss, declined to retain her as a patient.[2] Carolinas Health Care Systems initially refused to comply with the Defendants' subpoena of the Plaintiff's medical records because her chart contains a note from the Plaintiff in which she rescinds the previously executed authorization to release her records.

In response to the Plaintiff's continued failure to produce her medical records, on July 30 and August 16, 2007, respectively, the Defendants filed two Motions, a "Renewed Motion for Sanctions..." (document #79) and a "Motion for Contempt and Supplement to Renewed Motion for Sanctions ..." (document #85).

On September 5, 2007, the undersigned granted the Defendants' Motions to the extent that the Plaintiff was ordered to produce her complete medical records within 30 days or be "**PROHIBITED FROM PRESENTING THE TESTIMONY OF HER HEALTH CARE PROVIDERS OR OFFERING THE SUBJECT RECORDS INTO EVIDENCE**."

---

[2] With regard to Dr. Moss' records, the Plaintiff attempted to have some, but not all, of her records transmitted to the Defendants, but, later, as to this provider only, provided a written statement withdrawing her objections to production of her complete medical records.

4

"Memorandum and Order" at 5 (document #91) (emphasis in original). "Nevertheless, due to [Plaintiff's] pro se status," the Court declined to impose requested monetary sanctions, but instead repeated its earlier warning as follows:

> Finally, the undersigned warns the Plaintiff, for the second time, that any further failure to respond in a timely and thorough manner to any reasonable discovery requests not addressed in this Order, or otherwise to comply fully with any of the Court's Orders, the Local Rules, or the Rules of Civil Procedure, will likely result in the imposition of sanctions. **Sanctions can include the offending party being required to pay the opposing party's costs, including reasonable attorney's fees in their entirety, and may also include dismissal of the Complaint with prejudice.**

Id. at 7-8 (emphasis in original).

From December 17, 2007 through January 14, 2008, discovery was stayed in order to permit the parties to mediate, which was unsuccessful. See "Order" entered December 17, 2007 (document #98) (granting Defendants' "Motion to Stay Discovery Pending Mediation") and "Report of Mediator [Sydnor Thompson]" (document #100) filed January 14, 2008.

The Defendants credibly represent that on July 16, 2008, and after discussions between the Plaintiff and defense counsel regarding a mutually-convenient time, the Plaintiff deposed Clive Manbodhe, a current TIAA-CREF employee, in Charlotte, North Carolina. Defense counsel Abigail Politzer of the firm Sutherland Asbill & Brennan, LLP, Atlanta Georgia, attended the deposition. At the beginning of the deposition, the Plaintiff sought to have a friend, that is, a third-party nonlawyer, assist her while she questioned Mr. Manbodhe. When Ms. Politzer objected to the friend's presence, the Plaintiff agreed that her friend would not attend that deposition, which apparently was conducted without further incident.

At the Plaintiff's earlier request, the deposition of Defendant Jackson, who resides in Myrtle

Beach, South Carolina, had been scheduled for July 18, 2008 in Myrtle Beach. Following the conclusion of Mr. Manbodhe's deposition, Ms. Politzer asked the Plaintiff if she sought to have her friend attend Ms. Jackson's deposition and expressed the concern that if she did, the parties should promptly seek resolution of the issue from the Court, rather than expend additional time and resources preparing for and traveling to Ms. Jackson's deposition, which would need to be postponed. Later the same day, that is, on July 16, 2008, the Plaintiff contacted the court reporter she had retained and cancelled Ms. Jackson's deposition, but did <u>not</u> then inform Ms. Politzer that the deposition was cancelled.

On July 17, 2008, at 2:00 p.m. and after Ms. Politzer had traveled from Charlotte to Myrtle Beach by commercial airline, the Plaintiff spoke by telephone to Ms. Politzer, but again did <u>not</u> inform Ms. Politzer that she had cancelled the deposition a day earlier.

At 5:30 p.m. on July 17, 2008, and after defense counsel had spent 8 hours preparing Ms. Jackson for the deposition, the Plaintiff faxed a letter to Ms. Politzer's office informing her that the deposition was cancelled.

On August 11, 2008, the Plaintiff filed her "Motion of Noticed [sic] for Stipulated Protective Order" (document #121), in which the Plaintiff seeks to have a "Confidential" designation removed from the Defendants' Rule 68 Offer of Judgment so that she may "include this document in her [proposed] Motion for Sanctions to add to all the other violations of Professional Conduct/discovery abuse, etc." by defense counsel. It is apparent from this document, as well as from many of the Plaintiff's earlier filings, that what she characterizes as "unprofessional conduct" or otherwise sanctionable conduct by defense counsel is little more than the Defendants' rejection of the Plaintiff's settlement demands.

On August 28, 2008, the Defendants filed their "Motion for Settlement Conference" (document #124), in which they ask the undersigned to conduct a Judicial Settlement Conference. Although the Defendants acknowledge in their Motion that the Plaintiff is "distrusting of Defendants" and harbors "suspicion and personal bad feelings towards Defendants and Defendants' counsel," they expressed the hope that the Court could lead the parties to a mutually-agreed settlement of the Plaintiff's claims.

On September 8, 2008, the Plaintiff filed an 11-page "Opposition to Defendant's Motion for Settlement Conference" (document #128), in which she confirmed that she, in fact, mistrusts the Defendants and defense counsel and that she does not wish to attend a Judicial Settlement Conference. The Plaintiff again clearly identified her reason for believing that the Defendants and defense counsel have engaged in sanctionable conduct, as follows:

> The Defendants' attorneys have displayed throughout this litigation, extreme disrespect ... [Defendants and defense counsel] have not changed their disposition [sic] regarding my allegations in the plaintiff's complaint. Instead, they have prolonged this litigation solely to continue to make attempts to deceive me into accepting extreme [sic] small amounts of money in exchange to drop this case.... [P]laintiff have [sic] lost faith that defendant [sic] will fairly settle this case.

Document #128 at 2.

On September 10, 2008, and in obvious recognition that a Judicial Settlement Conference would be fruitless at this point in the proceedings, the Defendants filed their "Second Motion for Sanctions" (document #129), in which they seek dismissal of the Complaint, monetary sanctions equal to their costs incurred due to the cancelled deposition and the prosecution of this Motion, and an Order requiring the Plaintiff to seek the Court's permission prior to filing any further Motions in this case. Ms. Politzer avers that Defendant TIAA-CREF incurred a total of $5,965 in unnecessary

7

attorney's fees and other costs as a direct result of the Plaintiff's misconduct in cancelling Ms. Jackson's deposition. Specifically, Ms. Politzer expended 13.9 hours (at an hourly rate of $290 for a $4,031 in attorney's fees) on or after July 16, 2008 traveling to and preparing for Ms. Jackson's deposition. The cost of Ms. Politzer's air travel from Charlotte to Myrtle Beach, plus related car rental, hotel accommodations, and meals, was $1,934. Ms. Politzer also expended an additional 22.3 hours (at $290/hour for $6,467 in attorney's fees) preparing the subject Second Motion for Sanctions.

On October 3, 2008, the Defendants filed their Motion for Summary Judgment (document #136) which is pending before the District Judge to whom this case is assigned (the Honorable Robert J. Conrad, Jr.).

In light of the Plaintiff's vehement opposition to a settlement conference and the Defendants' subsequent decision to pursue sanctions against the Plaintiff, and having conferred with Judge Conrad's chambers' staff, the undersigned will <u>deny</u> the Defendants' "Motion for Settlement Conference."

The "Plaintiff's Motion ... for ... Protective Order" and the Defendants' "Second Motion for Sanctions" have been fully briefed and are, therefore, ripe for disposition.

## II. <u>DISCUSSION</u>

### A. <u>Plaintiff's Motion for Protective Order</u>

As discussed above, the Plaintiff seeks to have a "Confidential" designation removed from the Defendants' Rule 68 Offer of Judgment so that she may "include this document in her [proposed] Motion for Sanctions to add to all the other violations of Professional Conduct/discovery abuse, etc."

Federal Rule of Civil Procedure 68 provides:

> **(a) Making an Offer; Judgment on an Accepted Offer.** More than 10 days before the trial begins, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 10 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.
>
> **(b) Unaccepted offer.** An unaccepted offer is considered withdrawn, but it does not preclude a later offer. Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs.

Fed. R. Civ. P. 68(a), (b). First, the Plaintiff does not argue that she has accepted the Defendants' offer of judgment. Accordingly, as provided by Rule 68(b), evidence of an unaccepted offer is not admissible for her stated purpose – a motion for sanctions.

Further, it is generally accepted that "[s]ettlement amounts or negotiations relating thereto should be placed before the Court *only* upon request by the Court made subsequent to approval by all parties." Simmons v. Justice, 87 F. Supp. 2d 524, 534 (W.D.N.C. 2000) (emphasis in original). With this general principle in mind, it is also true that:

> Rule 68 is really unambiguous – its first sentence provides only for the *service* of offers of judgment on the adverse party, while its second sentence calls for *filing* of the offer only if the adverse party accepts it within ten days after such service. By strong negative inference, that latter reference to filing if and when the offer is accepted confirms the plain meaning of Rule 68's first sentence that no filing is permitted at the time of tender. And that is the uniform view of the commentators . . . as well as of the few cases that have been compelled to look at the issue . . . .

Kason v. Amphenol Corp., 132 F.R.D. 197 (N.D. Ill. 1990) (emphasis in original) (internal citations omitted).

The Plaintiff's stated reason for filing this unaccepted offer of judgment with the Court, that is, to include the subject offer in a motion for sanctions, is both impermissible according to the Rule

itself and unnecessary as the Defendants have not acted in bad faith by keeping the Offer of Judgment confidential. Accordingly, the "Plaintiff's Motion ... [for] Protective Order" is denied.

### B. Defendants' Second Motion for Sanctions

As the Plaintiff has now been twice warned, a variety of sanctions are available under Rule 37(b) for a party's failure to obey rules governing discovery and orders of the district court, including imposing costs and attorneys' fees, dismissing the complaint, and/or entering judgment against the offending party. See Fed. R. Civ. P. 37(b); National Hockey League v. Metro. Hockey Club, 427 U.S. 639, 643 (1976); Mutual Fed. Sav. & Loan v. Richards & Assocs., 872 F.2d 88, 92 (4th Cir. 1989); and Wilson v. Volkswagen of America, Inc., 561 F.2d 494, 504-04 (4th Cir. 1977).

In Mutual Federal, the Fourth Circuit restated the four factors a district court should consider in deciding whether to impose the sanctions of dismissal or entry of judgment. These factors are:

> (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

872 F.2d at 92, citing Wilson, 561 F.2d at 503-04.

Applying these legal principles to the facts in this case, the undersigned concludes that dismissal of the Complaint as a sanction for the Plaintiff's discovery abuses to date is not yet warranted. Although the undersigned will impose monetary sanctions, discussed below, against the Plaintiff, these will be the first sanctions imposed in this proceeding. As the Fourth Circuit held in Mutual Federal, dismissal ordinarily should not be the first sanction imposed on an offending party, but rather is a harsh sanction which should be imposed only after lesser sanctions have proven

ineffective. Id..

Finally, while it is clear that the Plaintiff has acted to some extent in bad faith, it also appears that the pro se Plaintiff has not yet fully understood the effect and import of her actions – a condition that the present imposition of monetary sanctions should remedy. Moreover, the Defendants evidently reached the same conclusion because rather than seeking sanctions in mid-July following the Plaintiff's cancellation of Ms. Jackson's deposition, they elected to forebear for two more months in the hope that a Judicial Settlement Conference might be successfully conducted. Indeed, the Defendants did not submit this Motion until September 10, 2008, two days after the Plaintiff filed a formal opposition to the Defendant's earlier Motion for Settlement Conference – although the Defendants' Second Motion for Sanctions (which required more than 22 hours of Ms. Politzer's time) was prepared earlier. Accordingly, the undersigned will respectfully recommend that the Defendants' Motion for Sanctions be denied as to dismissal of the Complaint.

The undersigned will impose, however, modest monetary sanctions against the Plaintiff. Although the Plaintiff may have operated in part – to this point in the proceedings – under the misguided belief that the Defendants' refusal to agree with her as to the rightness of her cause entitled her to engage in the pattern of behavior described above, it is also clear that where her own costs were concerned the Plaintiff made rational decisions to minimize those costs. On July 16, 2008, and almost immediately upon realizing that there might be a controversy concerning Ms. Jackson's deposition, rather than risk that she would be liable to the court reporter for an appearance fee, the Plaintiff contacted the court reporter and cancelled the deposition. At the same time, however, and even after Ms. Politzer expressed a concern that the Defendants not be required to waste resources preparing for and traveling to Ms. Jackson's deposition in the event it was cancelled,

11

the Plaintiff chose to delay 24 hours in informing Ms. Politzer that she, in fact, would not go forward with the deposition. In the interim, and as a direct result of the Plaintiff's secretive and manipulative behavior, Defendant TIAA-CREF incurred $5,965 in attorney's fees and travel expenses that otherwise could have been avoided.

Having determined that imposition of monetary sanctions is appropriate, the remaining issue is the amount. Although recognizing that the Defendants have incurred far greater expenses and understandably would like to recover a much larger sum, in recognition of the Plaintiff's <u>pro se</u> status and her evident inability to pay a higher amount, the undersigned will require her to pay $750.00 as a monetary sanction.

Finally, the undersigned will <u>deny</u> the Defendants' request that the Plaintiff be prohibited from filing any further motions in this action without seeking and receiving prior permission from the Court. The record shows that discovery disputes have been the subject of the bulk of the parties' filings and, as noted above, discovery is concluded. Moreover, the Defendants' Motion for Summary Judgment is pending and there is the possibility that the Plaintiff reasonably might need to file a motion related to the pending dispositive Motion, for instance, a motion for extension of time to respond. Accordingly, the undersigned concludes that a blanket filing prohibition is inappropriate at this point in the proceedings.

The undersigned does warn the Plaintiff, however, that any Motion or other document that she does file must comply with the Local Rules and the Federal Rules of Civil Procedure, including Rule 11, which places an affirmative duty on the party filing the Motion to have a reasonable good faith belief that the facts stated in the Motion are true and that the relief sought in the Motion is justified. **Parties filing motions that violate Rule 11 are subject to imposition of sanctions,**

12

**including monetary sanctions, dismissal, or entry of judgment**.

### III.  ORDER

**NOW, THEREFORE, IT IS ORDERED**:

1. The "Plaintiff's Motion of Noticed [sic] for Stipulated Protective Order" (document #121) and the Defendants' "Motion for Settlement Conference" (document #124) are **DENIED**.

2. To the extent that the Defendants' "Second Motion for Sanctions  ... " (document #129) seeks monetary sanctions and other nondispositive relief, the Motion is **GRANTED IN PART** and **DENIED IN PART,** that is, the Plaintiff Brenda Collins is **ORDERED** to pay the sum of $750.00 to the Defendant TIAA-CREF as a discovery sanction under Fed. R. Civ. P. 37(b), and the Motion is **DENIED** in all other respects.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned will respectfully recommend that to the extent that the Defendants' "Second Motion for Sanctions  ... " (document #129) seeks dismissal of the Complaint, the Motion be **DENIED**.

### V.  NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same.  Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003);  Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990).  Failure to file objections to this Memorandum with

the district court constitutes a waiver of the right to de novo review by the district court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to the pro se Plaintiff, Brenda Collins, 301-D Heritage Lake Drive, Charlotte, NC 28262; to counsel for the Defendants; and to the Honorable Robert J. Conrad, Jr.

**SO ORDERED AND RECOMMENDED.**

Signed: October 21, 2008

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge