## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:06cv304-RJC

| | | |
|---|---|---|
| **BRENDA COLLINS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **TIAA-CREF, KATHY JACKSON,** | ) | **ORDER** |
| **TARAN NARAYAN, & ROBERT** | ) | |
| **SMITH,** | ) | |
| **Defendants.** | ) | |
| | ) | |

      **THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment (Doc. No. 136), Plaintiff's Response (Doc. No. 139), and Defendants' Reply (Doc. No. 148). Defendants raised no new issues in their Reply, but Plaintiff filed a Second Response in Opposition without leave from the Court. (Doc. No. 150). Since it does not shed further light on any of the relevant issues, Plaintiff's Second Response will not be addressed, nor will Defendants' Reply to Plaintiff's Second Response (Doc. No. 155). Also before the Court is Plaintiff's Motion to Vacate Order on Motion for Sanctions. (Doc. No. 164). After reviewing arguments by the parties and appropriate case law, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Motion to Vacate Order on Motion for Sanctions.

## I.    BACKGROUND

      Plaintiff Brenda Collins is an African American female. She was hired by TIAA[1] on April 15, 2002. She began work at TIAA's Charlotte office as an Individual Service Representative in the Automated Telephone System ("Call Center") unit in Client Services. After more than two years

---

[1] TIAA was erroneously identified in the Complaint as "TIAA-CREF."

in the Call Center, Collins applied in June 2004 for an internal transfer to the Pension Products division to work as a Service Representative, focusing on data processing. She received and accepted an offer for the position in Pension Products.

## A. 2004 Complaints to Supervisor and Human Resources

On November 22, 2004, Collins wrote a letter to her supervisor, Taran Narayan, requesting a seat transfer because she alleged a co-worker was "creating a hostile working environment." (Doc. No. 137-5). Collins alleged in the letter that the co-worker would play videos containing profanity and unprofessional language with other co-workers at a nearby workstation, disrupting her ability to concentrate and work productively. She also complained of another co-worker who sat nearby, because he spoke "loud . . . and very loosely about his personal sex life" and used profane language. Id. Collins further alleged that supervisor Denise Glover was allocating work unfairly. Finally, she alleged that supervisor John Snell, of Carribean descent, stated, "You Americans think you know everything, because you have a degree." Id. Collins wrote, "I feel like I am being discriminated against since everyone that I come in contact with is from the Islands and they are always very angry and nasty towards me." Id.

Collins followed this letter by contacting Kathy Jackson, Senior Human Resources Generalist, to discuss similar concerns. She complained that a female Caribbean American co-worker, previously identified in the letter, would play videos that contained "men with no clothes on," as well as comedic videos containing profanity and unprofessional language, on her computer while other co-workers watched. (Doc. Nos. 137-1 at 166-67, 169-70; 137-2 at 119-20). Collins alleged that the co-worker was creating a hostile work environment. Collins further alleged that Narayan treated the co-worker at the center of the complaint more favorably than her regarding

absences, tardiness, and work assignments. She also claimed that Narayan gave her an unfairly negative performance appraisal.

TIAA promptly investigated Collins's allegations and addressed her concerns. In February 2005, Narayan and Jackson met with Collins, and Jackson informed her that the disruptive co-worker had been inappropriately using her computer and tardy for work, and that those issues would be addressed with that co-worker. Jackson further informed Collins that after an investigation, she had determined that work assignments were allocated on a fair basis, and that the performance appraisal was conducted fairly. Jackson instructed that Narayan would provide further guidance to Collins in improving her performance numbers and that Narayan would closely monitor informal gatherings, work assignments, absences, and tardiness within the department.

## B. Continued Complaints to Human Resources

In July 2005, Collins contacted Dermot O'Brien, Executive Vice President of Human Resources and Corporate Services, about her concerns regarding the allotment of work assignments. O'Brien informed Collins that she should contact Steve Timmons, Vice President of Human Resources, about her complaints. Collins contacted Timmons, and an August 2005 meeting was subsequently arranged at which Collins could express her concerns to Jackson and Robert Smith, Pension Products Director.

In the August 2005 meeting, Collins continued to allege that Narayan was unfairly allocating work and depriving her of overtime hours. She claims that Smith then became angry, raised his voice, and stated that she would never receive overtime hours because she was too slow. She further claims that Smith said, "we would never choose you for overtime because you don't come close to the mark." (Doc. No. 137-2 at 131).

Jackson investigated Collins's complaints about Narayan and arranged a September 9, 2005 meeting among Collins, Narayan, and Jackson to discuss the results. At the meeting, Jackson informed Collins that after a thorough investigation, there was no evidence in support of Collins's repeated complaints of unfair work assignment allocation and manipulation. At some point during the meeting, Collins alleges that Jackson stated, "You are miserable[,] [y]ou hate your job, [y]ou hated the call center job." (Doc. No. 1 at 15). Collins also claims that Jackson became angry and said, "You have a dark aura presence wherever you go." (Doc. No. 1 at 4). Finally, Jackson told Collins that she should post out of the Pension Products division or leave the company. (Doc. Nos. 1 at 15; 137-1 at 94).[2] In response, Collins told Jackson that she had already interviewed for another position within the company. Jackson then allegedly demanded to know with whom Collins had interviewed. Collins claims she responded that she was interviewing with the Call Center, her former division.

## C. Collins Fails to Receive an Offer

Prior to the September 9, 2005 meeting with Jackson and Narayan, Collins had interviewed for a position in her former unit, the Call Center. While the parties agree that Holland Moore, an African American female, was one of the interviewers, they differ as to the second interviewer.[3]

---

[2] TIAA and Jackson contest Collins's account of this statement. They claim Jackson simply told Collins to "consider" posting out or leaving the company because she was so unhappy in the Pension Products division. (Doc. No. 137-11 at 4). The Court has resolved this discrepancy in favor of Collins, the nonmovant, at the summary judgment stage.

[3] Collins stated she was interviewed by a "Ms. Brown," a Caucasian female, and that this "Ms. Brown" did all the questioning. (Doc. No. 137-2 at 114-15). The Court finds from the evidence presented that Heidi Locastro, and not "Ms. Brown," was the interviewer. This factual finding makes little difference in the Court's determination of the legal issues presented.

TIAA and Heidi Locastro, by affidavit, have presented evidence that Locastro, a Caucasian female, in fact was the person who conducted the interview along with Moore. (Doc. No. 137-12 at ¶¶ 5-6).

Locastro at that time held the position of Inbound Team Manager, Planning & Service Center, within the Call Center. Collins received notice on September 22, 2009 that she had failed to receive an offer for the position. Collins claims that she then inquired of Clive Manbodhe, Call Center Director, as to why she did not receive an offer and that he told her, "We know you're qualified, but that's not the reason you weren't chosen. I'll have Holland Moore call you and follow up with you and she'll go over it with you." (Doc. No. 137-2 at 158). Moore then called Collins the same day and explained that her answers to the interview questions "did not indicate flexibility, adaptability and ownership of problems." (Doc. Nos. 1 at 19; 137-1 at 158-59). Locastro confirms in her affidavit, "Moore and I did not select Collins for the position because her interview answers were problematic and did not reflect flexibility, adaptability, or ownership of problems." (Doc. No. 137-12 at ¶ 6). She further states, "Collins' interview answers created question regarding her ability to work independently and effectively, in the Call Center position, without requiring additional supervision." Id.

Collins claims that while speaking with Moore about why she was not offered the position, Collins asked if she could re-apply, since there were multiple openings for the same position for which she interviewed. Collins alleges that Moore said she did not know if HR would let Collins interview for the position again. Collins further claims she did not receive the position because when Jackson learned that she had interviewed with the Call Center, Jackson shared the information with Narayan, and Narayan told Manbodhe, the Call Center's Director, not to hire her.

There had been four purportedly identical open positions in the Call Center for which Collins had interviewed when she spoke with Moore and Locastro.  After Collins failed to receive an offer, she inquired into who did receive them.  She determined that a Caucasian male named Wayne Smithling[4] received one of the positions, and that a "Black (bi-racial) male" named Simeon Hills received another of the positions.[5]  (Doc. No. 137-2 at 62).  She alleges that Hills was not hired until after she filed a charge with the Equal Employment Opportunity Commission ("EEOC").  While in her complaint Collins stated that Caucasian males were hired for the two remaining positions, she did not provide names, and by the time of her deposition, she could not say whether anyone was actually hired for the other two positions.

## D.  Other Alleged Defamatory Statements

Collins claims TIAA employees made other statements not already mentioned, the dates of which are unclear.  She alleges that they all took place during her time in Pension Products, which began in June 2004 and ended in November 2005.  She alleges Jackson once stated that people who work in the Call Center are "slow."  She also claims that her supervisor Snell once called Collins slow while in the presence of co-workers.  In addition, Collins claims Narayan once called her slow in front of other employees, and she also claims Narayan told Snell and Glover that Collins was trying to get Narayan fired by filing complaints against him.  (Doc. No. 137-2 at 48).

_____

[4] Collins identified Smithling in her deposition as "Wayne Smithfield." See (Doc. No. 137-1 at 160).  TIAA has confirmed that it was actually Wayne Smithling, and that he is indeed a Caucasian male.

[5] Collins identified Simeon Hills in her complaint as "Simon Hill."  In addition, Collins's complaint refers to Hills as a "Black (bi-racial) male," but in her deposition, she could not say whether Hills had an African American parent or not.

**E. EEOC Charge and Complaint**

Collins filed a charge with the EEOC on October 24, 2005. (Doc. No. 1 at 19). The charge alleges discrimination based on race, sex, and national origin, as well as retaliation. The sole adverse employment action to which Collins points in the charge is that she was not offered the position in the Call Center for which she interviewed in September 2005. She did not assert a continuing violation in the charge. Collins filed a complaint in this matter on July 25, 2006. The complaint alleges defamation, in addition to a number of Title VII claims not mentioned in the EEOC charge. These other Title VII claims include denial of equal pay/work and general harassment, and in addition to the original claims of race, sex, and national origin discrimination and retaliation, the complaint adds allegations of discrimination based on color and religion.

## II.     SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The pleadings of a pro se litigant should be construed liberally. Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3.

The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the Record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677, 557 U.S. ___ (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III.    DISCUSSION

### A.  Claims Not Addressed

Collins alleges discrimination based on gender, race, and national origin, as well as retaliation when TIAA failed to extend her an offer for a job in the Call Center, all in violation of Title VII. Collins also alleges defamation by TIAA and the individual Defendants. Collins has raised several other Title VII claims during the course of the litigation: (1) that she was subjected to discrimination based on color and religion, (2) that she was subjected to a hostile work environment, (3) that the company discriminated against her in her pay, and (4) that she was constructively discharged. However, none of these other claims were mentioned in her EEOC charge, and no later charge was filed. "A plaintiff fails to exhaust her administrative remedies where . . . [her] administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in [her] formal suit." Chacko v. Patuxent Inst., 429 F.3d 505, 506

(4th Cir. 2005); see also Logan v. Colonial Williamsburg Hotel Props., Inc., 941 F. Supp. 60, 62 (E.D. Va. 1996) (holding EEOC charge limited to sex discrimination insufficient to give notice of sexual harassment claim); Nicol v. Imagematrix, Inc., 767 F. Supp. 744, 753 (E.D. Va. 1991) (holding EEOC charge limited to pregnancy discrimination insufficient to give notice of broad claims of hostile work environment and sexual harassment claims). Therefore, the Title VII claims not referenced in Collins's EEOC charge are dismissed, since Collins has not exhausted her administrative remedies as to those claims.

As a result, the only relevant adverse employment action at issue is Collins's denial of the Call Center position on September 22, 2005, a discrete act for which she timely filed a charge with the EEOC on October 24, 2005. (Doc. No. 1 at 19). Under Title VII, a plaintiff must file a charge of discrimination with the EEOC before filing a lawsuit. 42 U.S.C. § 2000e-5(e); Gilliam v. S.C. Dep't of Juvenile Justice, 474 F.3d 134, 139 (4th Cir. 2007). Further, a plaintiff is required to file a charge with the EEOC within the appropriate limitations period for each alleged unlawful act. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002); Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009); accord 42 U.S.C. § 2000e-5(e)(1) (2006). Collins did not file a charge with the EEOC prior to October 24, 2005, and she did not assert a continuing violation in her charge. Therefore, only acts alleged to have occurred within 180 days of October 24, 2005 are actionable, and the Court dismisses any claims involving acts occurring prior to April 27, 2005.[6]

---

[6] Title 42 U.S.C. § 2000e-5(e)(1) contains two statutory periods, one of 180 days and one of 300 days. The 180-day period applies in this case because there were no prior proceedings with a state or local agency.

**B. Discrimination**

Collins alleges that TIAA discriminated against her based on gender, race, and national origin when it failed to offer her a job in the Call Center. In order to prevail in a disparate treatment claim based on gender, race, or national origin, a plaintiff may proceed by either the "pretext" or "mixed-motive" framework. See Worden v. SunTrust Banks, Inc., 549 F.3d 334, 341 (4th Cir. 2008). Regardless of the framework used and whether a plaintiff puts forth direct or circumstantial evidence, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000). While Collins has not argued that the mixed-motive framework applies, the Court will consider both the pretext and mixed-motive frameworks in light of her pro se status.

**1. Pretext Framework**

Under the three-step McDonnell Douglas framework, the plaintiff must first establish a prima facie case of employment discrimination by producing evidence to fulfill four criteria related to the employment. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the plaintiff provides credible evidence of all four criteria, there is a presumption of discrimination. At the second step, the burden shifts to the defendant to provide some legitimate nondiscriminatory reason for its employment decision. Id. If the employer provides a nondiscriminatory reason for its decision, the court then looks to the third step of the standard, shifting the burden back to the plaintiff to show by a preponderance of the evidence that the defendant's proffered reason is pretextual. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If a plaintiff fails to establish a prima facie case of discrimination or later fails to raise a material factual dispute

concerning the employer's non-discriminatory reason for the alleged discriminatory act, the defendant is entitled to summary judgment. <u>Henson v. Liggett Group, Inc.</u>, 61 F.3d 270, 274 (4th Cir. 1995).

### a. Step One: Prima Facie Discrimination

To establish a prima facie case of discriminatory denial of a job position, the plaintiff must show "(1) [she] is a member of a protected group; (2) [she] applied for the position in question; (3) [she] was qualified for the position; and (4) [she] was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." <u>Brown v. McLean</u>, 159 F.3d 898, 902 (4th Cir. 1998).

Collins is a member of multiple protected groups, the relevant ones here being African American and female. Further, she applied for the position in question. Collins therefore satisfies the first two elements of a prima facie case for discriminatory denial of a job.

As to the third element, Collins, at least at the summary judgment stage, demonstrates that she was qualified for the job. Collins asserts that Clive Manbodhe, the purported hiring manager for the Call Center position, told Collins, "We know you're qualified, but that's not the reason you weren't chosen." While TIAA contests this statement, and Manbodhe denied it in his deposition, the Court will resolve the issue in favor of the nonmoving party at the summary judgment stage. Further, while TIAA claims that Manbodhe's statement is inadmissible hearsay, Manbodhe, as the hiring manager for the position, was TIAA's agent, and thus his statement is admissible as a vicarious admission under Federal Rule of Evidence 801(d)(2)(D).[7] Despite Moore's evaluation that

---

[7] Under Rule 801(d)(2)(D), the statement was made by TIAA's agent concerning a matter within the scope of the agency or employment; it was made during the existence of the relationship, since Manbodhe was the director of the Call Center at the time he allegedly made the statement; and the statement concerned a position in the Call

Collins's interview answers indicated a lack of flexibility and ownership of problems and Locastro's questioning of Collins's ability to work independently, a reasonable jury could find that Manbodhe's statement alone is proof that Collins was qualified for the position.

Finally, to establish a prima facie case of discrimination, Collins must show that she was rejected for the position under circumstances giving rise to unlawful discrimination. "[A] plaintiff must ordinarily show that the position ultimately was filled by someone not a member of the protected class." Brown, 159 F.3d at 906. Regarding her national origin claim, although Collins in her complaint identifies four comparators who received the job for which she applied, she does not identify the national origin of any of them. Nor does she allege that they were outside her class of nationality, which is American. Therefore, Collins has failed to establish a prima facie case of discrimination based on national origin.

Collins does state in her complaint that "three White men and one Black (bi-racial) male" were hired for the four open positions for which she applied. In her deposition, however, she only remembered two of the positions having been filled, one by a Caucasian male and the other by a "bi-racial" male named Simeon Hills. In light of the lack of clarity, the Court is inclined to accept the common elements of both the complaint and deposition: four open positions, two of which there is uncertainty as to their having been filled, one of which was filled by a Caucasian male, and one of which was filled by a "Black (bi-racial) male." In either case, Collins has shown, and TIAA has not contested, that the positions were filled with people outside her gender class. She has further established that one of the men was Caucasian, which is a class outside her protected race of African

Center. The statement is also admissible under Rule 801(d)(2)(C), since as an upper manager for the position in question, Manbodhe was likely authorized by TIAA to make a statement to an unsuccessful applicant as to why she did not receive the job.

American. However, Collins also admits in her complaint that Simeon Hills, a "Black (bi-racial) male," was hired for another one of the open positions. While hiring a member of the same protected class as the plaintiff[8] is not conclusive evidence of nondiscrimination, it "ordinarily gives rise to an inference that the defendant did not [discriminate]." See Miles v. Dell, 429 F.3d 480, 488 (4th Cir. 2005). Collins provides no evidence that the position was not filled by an individual of African American heritage – she has pled that Hills is a "Black (bi-racial) male," but she has not produced through interrogatory, deposition, affidavit, or other means any evidence that Hills is not African American. Still, Collins in her complaint alleges, without producing further evidence, that TIAA did not hire Hills until after she filed her EEOC charge. But Collins cannot simply rest on this mere allegation in order to establish the existence of a material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Construing the facts in the light most favorable to the nonmoving party, a reasonable jury could not find that Collins was denied the job under "circumstances giving rise to an inference of unlawful discrimination" based on her race. Thus while at this stage Collins's gender discrimination claim survives, she fails to establish a prima facie case of national origin or race discrimination, and these claims therefore fail.[9]

### b. Step Two: Legitimate Nondiscriminatory Reason

TIAA alleges, and Collins admits, that TIAA has provided nondiscriminatory reasons for not offering her the job. Collins does not dispute that Moore told her that her interview answers did not

---

[8] A bi-racial individual with an African American parent has been considered by other courts to be of the same protected class as African Americans. See, e.g. Moore v. Dolgencorp, Inc., No. 1:05-CV-107, 2006 WL 2701058, at *4 (W.D. Mich. Sept. 19, 2006) (discussing the rationale behind this consideration and citing Smith v. Mission Associates Ltd. Partnership, 225 F. Supp. 2d 1293, 1299 (D. Kansas 2002) (holding bi-racial plaintiffs, "being half black and half caucasian," are members of a protected class)).

[9] Even if Collins could make out a prima facie case on the race discrimination claim, she cannot establish pretext. See infra.

convince them she held the "flexibility, adaptability, or ownership of problems" that they were looking for in the position. (Docs. No. 1 at 19; 137-1 at 158-59). Further, Locastro found that Collins's interview answers "created question regarding her ability to work independently and effectively, in the Call Center position, without requiring additional supervision." (Doc. No. 137-12 at ¶ 6). TIAA has satisfied its burden of producing a legitimate, nondiscriminatory reason for failing to offer Collins the position.

### c. Step Three: Evidence of Pretext

The final step of the <u>McDonnell Douglas</u> burden-shifting framework requires Collins to prove by a preponderance of the evidence that TIAA's legitimate, nondiscriminatory reason for failing to hire her is pretextual. Collins provides as evidence of pretext the following allegations: Kathy Jackson of human resources demanded to know with whom and for what position Collins was interviewing; Jackson told Taran Narayan, Collins's supervisor, that Collins was interviewing in the Call Center; Narayan told Clive Manbodhe, hiring manager of the Call Center, not to hire Collins. Collins argues that Narayan and Manbodhe were both raised in Guyana, and that they therefore have been instilled from birth with the belief that women are inferior. All of these allegations, and others that Collins asserts, have one thing in common: they are unsupported conclusions. She provides no evidence outside her own suspicions that any of these conversations took place.

Further, although Collins fails on the race discrimination claim at step one, she also cannot show pretext. Collins stated in her complaint that TIAA hired a "Black (bi-racial) male" for one of the positions for which she applied. This allegation is also supported by her deposition testimony. Such an admission certainly supports the veracity of TIAA's non-discriminatory reason for not offering Collins the position. Collins's conclusory allegations of gender and race discrimination are

insufficient to establish by a preponderance of the evidence that TIAA's proffered reasons for not offering her the job are pretextual. Therefore, under the McDonnell Douglas framework, Collins fails to raise a material factual dispute regarding TIAA's non-discriminatory reasons for not offering her the job, and each of her discrimination claims fail under the pretext framework.

### 2. Mixed-Motive Framework

Under the mixed-motive framework, a plaintiff may prove unlawful discrimination by showing through either direct or circumstantial evidence that her gender, race, or other protected characteristic motivated the adverse employment action. See Desert Palace, Inc. v. Costa, 539 U.S. 90, 101 (2003); Hill v. Lockheed Martin Logistics Mgmt. Inc., 354 F.3d 277, 285 (4th Cir. 2004). The plaintiff, however, "need not demonstrate that the prohibited characteristic was the sole motivating factor to prevail, so long as it was a motivating factor." Hill, 354 F.3d at 284. Rather, a plaintiff must put forth enough evidence "for a reasonable jury to conclude, by a preponderance of the evidence, that [the protected trait] was a motivating factor for any employment practice." Desert Palace, 539 U.S. at 101; Hill, 354 F.3d at 285.

Similar to Collins's failure to prove pretext, she fails to put forth sufficient evidence to prove gender, race, or national origin was a motivating factor in TIAA's decision not to offer her the position. Collins has simply provided no evidence outside her own assertions by which a rational jury could find that gender, race, or national origin played a role in her not receiving a job offer in the Call Center. The argument that all men of a certain national origin discriminate against women is not evidence. Nor is the bare assertion, with nothing more, that Collins did not receive the position because she is a professional African American woman. Further, Collins's admission in her complaint that a "Black (bi-racial) male" was hired for one of the open positions tends to belie her

allegation that race was a factor in her not receiving the position. While making numerous allegations in her complaint, Collins simply fails to substantiate any of these allegations with relevant evidence. Thus, Collins's conclusory allegations, paired with an inference of non-discrimination based on the hiring of a "Black (bi-racial) male," would not allow a reasonable jury to conclude by a preponderance of the evidence that gender, race, or national origin was a motivating factor in her denial of the position. The discrimination claims therefore fail under the mixed-motive framework as well.

## C. Retaliation

Collins next claims that TIAA denied her the Call Center position because she previously complained about a hostile work environment and favoritism by her supervisor toward a co-worker. To prevail, Collins must under the McDonnell Douglas framework first establish a prima facie case of retaliation. Dowe v. Total Action Against Poverty in Roanoake Valley, 145 F.3d 653, 656 (4th Cir. 1998). If Collins establishes a prima facie case, the burden then shifts to TIAA to articulate a non-retaliatory reason for its actions. Id. Finally, if TIAA meets this burden of production, then Collins must prove by a preponderance of the evidence that the proffered reason is a pretext for unlawful retaliation. Rhoads v. FDIC, 257 F.3d 373, 392 (4th Cir. 2001).

### 1. Prima Facie Retaliation

A prima facie case of retaliation under Title VII requires that a plaintiff prove "(1) that she engaged in a protected activity; (2) that an adverse employment action was taken against her; and (3) that there was a causal connection between the first two elements." Dowe, 145 F.3d at 656. In order to establish a protected activity, a plaintiff must show (1) that she subjectively, "in good faith,"

believed her employer was violating Title VII, and (2) that the belief was "objectively reasonable in light of the facts." Peters v. Jenney, 327 F.3d 307, 321 (4th Cir. 2003).

Collins cites multiple complaints to human resources and supervisors as the cause of TIAA's alleged retaliation. She points to the December 2004 complaint to Kathy Jackson of HR that a female co-worker was hindering her ability to work productively. Although the complaint to Jackson alleged that the co-worker was creating a "hostile working environment," Collins did not complain that she was subject to discrimination. This same complaint also alleged that Narayan treated another co-worker more favorably, and that Narayan's 2004 performance review of Collins was unfairly negative. Collins did not claim, however, that this alleged unfair treatment was related to her race, gender, national origin, or any other classification.

Collins in July 2005 contacted Steve Timmons of HR about her concerns regarding the allotment of work assignments. She further contacted numerous HR representatives about this same concern. However, Collins provides no evidence from these instances that she complained of a violation of Title VII, much less that she subjectively believed TIAA had engaged in actions that violated Title VII, or that such a belief would be objectively reasonable. See Peters, 327 F.3d at 321. General complaints of mistreatment, without more, do not give rise to protected activity. See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (noting that Title VII is not a "general civility code for the American workplace"); Balazs v. Liebenthal, 32 F.3d 151, 158-59 (4th Cir. 1994) (holding complaint of harassment was not protected where employee did not complain of discrimination). Collins has failed to show that she engaged in statutorily protected activity, and

therefore, her retaliation claim fails as to her December 2004 and July 2005 complaints to human resources.[10]

Collins's November 22, 2004 letter to Narayan, on the other hand, is protected activity. She wrote, "I feel like I am being discriminated against since everyone that I come in contact with is from the Islands and they are always very angry and nasty towards me." She also noted in the letter that her supervisor Snell, of Carribean descent, stated, "You Americans think you know everything, because you have a degree." This letter of complaint qualifies as protected activity in that it alleges discrimination based on national origin. Collins still fails to make out a prima facie case of retaliation, however, because she provides no evidence that the decisionmakers for the Call Center position had any knowledge of this letter. Further, the letter is dated November 22, 2004, and the alleged adverse employment action occurred in September of 2005. No reasonable jury would conclude that roughly ten months of time between the protected activity and the alleged adverse employment action, in combination with no evidence of knowledge of the protected activity by the decisionmakers for the Call Center position, establish a causal connection. Thus Collins's retaliation claim involving her November 22, 2004 letter to Narayan also fails to establish a prima facie case.

## D. Defamation

Collins alleges defamation against the three individual defendants and TIAA. TIAA has asserted, and Collins has not objected, that North Carolina law controls the defamation claims, and the Court thus finds that North Carolina law controls. To sustain a claim of defamation under North

---

[10] Even if Collins had engaged in a protected activity, she has failed to present any evidence that TIAA's proffered nondiscriminatory reason for not offering her the job was a pretext for retaliation. Nor has she presented evidence that the hiring manager or interviewers for the Call Center position had any knowledge of her prior complaints to HR, which would be key to establishing causation.

Carolina law, "a plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." Tyson v. L'eggs Prods., Inc., 351 S.E.2d 834, 840 (N.C. Ct. App. 1987). There are two forms of defamation recognized in North Carolina: defamation per se and defamation per quod. Donovan v. Fiumara, 442 S.E.2d 572, 574 (N.C. Ct. App. 1994). To prevail on a claim of defamation per se, a plaintiff must prove: "(1) defendant spoke or published base or defamatory words which tended to prejudice him in his reputation, office, trade, business or means of livelihood or hold him up to disgrace, ridicule or contempt; (2) the statement was false; and (3) the statement was published or communicated to and understood by a third person." Friel v. Angell Care, Inc., 440 S.E.2d 111, 113-14 (N.C. Ct. App. 1994). If a plaintiff proves defamation per se, the law presumes malice and damages. Donovan, 442 S.E.2d at 574. Alternatively, defamation per quod is available "[w]hen the defamatory character of the words does not appear on their face, but only in connection with extrinsic, explanatory facts . . . ." Eli Research, Inc. v. United Communs. Group, LLC, 312 F. Supp. 2d 748, 761 (M.D.N.C. 2004) (citing Badame v. Lampke, 89 S.E.2d 466, 467-68 (N.C. 1955)). A plaintiff asserting defamation per quod must prove special damages in addition to proving the elements of defamation per se. Id. (citing Badame, 89 S.E.2d at 468). "To prove special damages from defamation, a plaintiff's allegations must evidence a pecuniary loss rather than simple humiliation." Moore v. Cox, 341 F. Supp. 2d 570, 574 (M.D.N.C. 2004) (citing Johnson v. Bollinger, 356 S.E.2d 378, 384-85 (N.C. 1987)).

Collins alleges multiple defamatory statements by Jackson, Narayan, Smith, and her former supervisor Snell, who is not named as a defendant.[11]  She claims Jackson told Collins, in front of Narayan, that Collins was miserable, hated her life and job, and had a "dark aura."  Collins also alleges that Narayan, Smith, and Snell each called her "slow" at different points in time, and that Jackson at one point said people who work in the call center are "slow."  She also claims Narayan defamed her by stating in her 2004 performance appraisal that she was not meeting departmental goals for her position.  Finally, Collins alleges Narayan told Glover and Snell that she was trying to get Narayan fired by filing reports against him.

As to the 2004 performance appraisal by Narayan, Collins has not alleged that Narayan shared the appraisal with anyone else, and thus she has made no showing of publication.  The 2004 performance appraisal is not actionable.

As for the other statements that Collins alleges, she fails to provide any evidence other than her own pleadings and deposition testimony.  She does not corroborate any of Jackson's, Narayan's, Smith's, or Snell's purported statements by anyone who may have witnessed them.  While she alleges that numerous people were present when some of the purported statements were made, Collins provides not a single affidavit or deposition from even one of these people to support her defamation claims, all of which are denied by the Defendants.  There is little difference between a plaintiff's complaint and a plaintiff's deposition testimony that simply reiterates the complaint.  See Medina v. Spotnail, Inc., 591 F. Supp. 190, 197 (C.D. Ill. 1984) ("Conclusory allegations made in the complaint and in plaintiff's deposition . . . are not sufficient to withstand a motion for summary

_____

[11] The Court, out of caution, has construed Collins's complaint regarding Snell's statements as a claim against TIAA under respondeat superior, since Snell is not named as a defendant.

judgment . . . .").  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and . . . it should be interpreted in a way that allows it to accomplish this purpose."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Collins's conclusory allegations in her pleadings and deposition, without more, fail to present evidence from which a reasonable jury could find from a preponderance of the evidence that the statements were even spoken, much less published to others in establishing a claim of defamation. See Southprint, Inc. v. H3, Inc., Fed. App'x. 249, 255 (4th Cir. 2006) (holding defamation claim resting solely on basis of plaintiff's pleading did not "present specific facts showing that there is a genuine issue for trial") (citation omitted). Therefore, Collins cannot sustain a claim of defamation for any of the alleged statements by Jackson, Narayan, Smith, or Snell.[12]

## IV.  CONCLUSION

Collins fails to present evidence by which a reasonable jury could find that TIAA discriminated against her based on gender, race, or national origin. These claims fail under either the pretext or mixed-motive framework.  She similarly fails to present enough evidence  by which a reasonable jury could find that TIAA retaliated against her for engaging in protected activity. Finally, Collins's unsupported allegations of defamation fail to allow a reasonable jury to find that she was defamed.

---

[12] Moreover, most, if not all, of the alleged statements are incapable of factual validation, being mere opinion or rhetorical hyperbole.  Therefore, even if she could provide evidence that the statements were made, Collins would still have difficulty sustaining her claims of defamation under North Carolina law.  See Daniels v. Metro Magazine Holding Co., 634 S.E.2d 586, 590 (N.C. Ct. App. 2006) ("While there is no 'wholesale defamation exemption [from liability] for anything that might be labeled 'opinion,' . . . a statement must state or imply a defamatory fact to be actionable.'" (quoting Milkovich v. Lorain Journal Co., 497 U.S. 1, 18 (1990))).

**IT IS, THEREFORE, ORDERED** that:

1.  The Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. No. 136) as to all claims, and the case is therefore **DISMISSED**.

2.  The Court, having found no reason as to why the Court should reverse its earlier Order on Motion for Sanctions, **DENIES** Plaintiff's Motion to Vacate Order on Motion for Sanctions (Doc. No. 164).

Signed: September 23, 2009

Robert J. Conrad, Jr.
Chief United States District Judge